UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 24-CR-008

JUSTIN HANSON,

    Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Michael Carter and Julie Stewart, Assistant United States Attorneys, and the defendant, Justin Hanson, individually and by attorney Seth Orkand, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in seven counts of a nine-count indictment, which alleges violations of 18 U.S.C. §§ 371, 1347, 2(a) and 42 U.S.C. § 1320a-7b(b)(2).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

1

## COUNT FOUR
(Offering and Paying Kickbacks)

THE GRAND JURY FURTHER CHARGES THAT:

1. The allegations in paragraph 1 through 5 of this Indictment are realleged and incorporated by reference.

2. On or about the dates set forth below, in the State and Eastern District of Wisconsin,

## JUSTIN HANSON

knowingly and willfully offered to pay, paid, and caused to be paid remuneration, including any kickback, directly and indirectly, to G.O. in the form of payment, as set forth below, to induce G.O. to refer an individual to Noah for the furnishing and arranging for the furnishing of any item and service, namely, urine drug testing, and to induce G.O. to order and arrange for the order of any item and service, namely, urine drug testing, for which payment may be made in whole and in part under federal health care programs, including Medicare and Wisconsin Medicaid:

| Count | Date | Named Recipient | Approximate Amount |
|---|---|---|---|
| 4 | June 14, 2019 | J.J. | $2,709.16 |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that the facts set forth in Attachment A are true and correct and establish his guilt beyond a reasonable doubt.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum term of imprisonment of ten years and a maximum fine of $100,000. The count also carries a mandatory special assessment of $100, and a maximum of

2

three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 29-30 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment as to this defendant at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of offering and paying a kickback as set forth in Count Four, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly and willfully offered and paid remuneration, directly or indirectly, overtly or covertly,
>
> Second, that the defendant did so to induce another person to refer an individual for the furnishing or arranging of any item or service, or to recommend ordering any item or service; and
>
> Third, that the item or service was one for which payment was made, in whole or in part, by a federal health care program.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

3

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

4

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count Four is 8 under Sentencing Guidelines Manual § 2B4.1(a).

### Specific Offense Characteristics

17. The parties agree to recommend to the sentencing court that a 16-level increase, for the value of the benefit received by the defendant as a result of the above-referenced kickback and related kickbacks exceeded $1,500,000 under Sentencing Guidelines Manual §§ 2B4.1(b) and 2B1.1(b)(1)(I), is applicable to the offense level for the offense charged in Count Four.

### Role in the Offense

18. Pursuant to Sentencing Guidelines Manual § 3B1.1(c), the parties agree to recommend to the sentencing court that a 2-level increase be given for an aggravating role in the offense, as the defendant was an organizer or leader of criminal activity.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the

5

court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence of no longer than 30 months imprisonment. The parties understand that the defendant is not required to join the government in making its recommendation and that the defendant will be free to recommend a different sentence.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6, above. The parties further understand that the sentencing court

6

Case 2:24-cr-00008-JPS   Filed 08/13/24   Page 6 of 15   Document 20

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

27. The government agrees to recommend to the sentencing court that a fine of $100,000 be imposed against the defendant. If a fine is imposed by the sentencing court, the defendant agrees to pay this amount by certified check on the day of sentencing.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

29. The defendant agrees to pay restitution in the amount of $1,917,464 to Medicaid and $328,821 to Medicare. The parties agree to recommend that any restitution obligation be joint and several with co-defendant Mohammed Kazim Ali. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

30. The defendant agrees that, no later than the sentencing date set by the court, he will cause to be paid restitution to Medicaid in the amount of $1,917,464 and restitution to Medicare in the amount of $328,821.

### **DEFENDANT'S COOPERATION**

31. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of

8

others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

9

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any

other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea

11

agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

12

Case 2:24-cr-00008-JPS   Filed 08/13/24   Page 12 of 15   Document 20

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 8-12-24

JUSTIN HANSON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 8/12/24

SETH ORKAND
Attorney for Defendant

For the United States of America:

Date: 8/13/2024

GREGORY J. HAANSTAD
United States Attorney

Date: 8/13/2024

MICHAEL CARTER
Assistant United States Attorney

13

## Attachment A

Defendant Justin Hanson owned 49% of Noah Associates, Inc. (Noah), a clinical laboratory located in Milwaukee and West Allis, Wisconsin. Co-defendant Mohammed Kazim Ali owned 51% of Noah. Noah billed Medicaid and Medicare for services, including urine drug tests. Defendant is not a licensed medical provider. As an owner of Noah, Defendant was aware that federal law prohibits payment of remuneration in exchange for the referral of patients and/or the ordering or arranging for the order of services paid for by Medicare and Medicaid. Defendant, in fact, signed provider agreements on behalf of Noah with Medicare and Medicaid in which he agreed to comply with the Anti-Kickback Statute (AKS).

GRO Family Services LLC (GRO) is an alcohol and other drug abuse treatment provider located in Milwaukee, Wisconsin. Gregory Owens owned GRO. Owens was not a licensed medical provider. Like Noah, GRO billed Medicare and Medicaid for services provided to its clients. The Jesse Crawford Recovery Center (JCRC) is an alcohol and other drug abuse treatment provider with locations in Madison and Janesville, Wisconsin. JCRC also billed Medicare and Medicaid for services provided to its clients.

In approximately October 2017, Owens began to refer GRO's clients, including clients with Medicare and Medicaid coverage, to Noah and to order and arrange for the order of urine drug tests for GRO's clients, including tests paid for by Medicare and Medicaid, from Noah. From October 2017 through September 2020, Owens referred GRO's clients to, and ordered and arranged for the order of urine drug tests from, Noah. From November 2017 through at least December 2018, Owens also arranged for the order of urine drug tests by JCRC from Noah.

In exchange for Owens' referral and arranging for the order of urine drug tests for clients of GRO and JCRC from Noah, Defendant (along with his co-defendant, Ali), made payments to two individuals, J.O. and J.J., at Owens' direction. In January 2018, Ali had J.O. sign several agreements, including an agreement providing that J.O. would provide marketing services for Noah and that J.O. would comply with the AKS. In fact, as Defendant came to know, J.O. performed no marketing services for Noah, and Noah made the payments to J.O. in order to induce Owens to refer GRO's and JCRC's clients to Noah for urine drug testing. Defendant and Ali wrote 95 checks to J.O. between November 14, 2017, and February 15, 2019, and the checks generally falsely stated that the payments were made to J.O. for "marketing" or "marketing/collecting" services. Defendant and Ali wrote separate checks to J.O. for the payments relating to patients referred from GRO and patients referred from JCRC. Defendant and Ali paid J.O. $150,707 in total.

Beginning in January 2019, Defendant and Ali, at Owens' direction, began making payments to J.J. instead of J.O. Defendant met with J.J and J.J. signed an agreement falsely stating that she would comply with the AKS. As Defendant came to know, J.J. never performed any work for Noah. Defendant and Ali nonetheless continued to make payments to J.J. in exchange for Owen's referral of clients to Noah for urine drug testing. Defendant and Ali paid J.J. approximately $261,031 in 85 payments from January 14, 2019, through September 18, 2020. As alleged in Count 4 of the Indictment, Defendant paid J.J. $2,709.16 on or about June

14

14, 2019 in order to induce Owens to refer and arrange for the order of urine drug tests from Noah.

Noah billed Medicare and Wisconsin Medicaid for urine drug tests for GRO and JCRC clients referred to, and ordered from, Noah in exchange for the indirect kickback payments to Owens. The parties agree that the total loss suffered by Wisconsin Medicaid due to the above-referenced kickbacks and all related conduct was $1,917,464. The total loss suffered by Medicare due to the above-referenced kickbacks and all related conduct was $328,821.